We'll take the cases in the order listed, except to understand one case, an out-of-town attorney has not yet arrived. We'll see what the situation is when we call that case. And then we have one case submitted on the briefs, United States v. De La Rocha Lopez. We'll take the other cases in the order shown on the calendar. And the first case is United States v. Belone or Boloney. Ready to proceed? All right, let's go. Good morning, Your Honor. Jeffrey Williams, Assistant Federal Public Defender for the District of Arizona, on behalf of the appellate, Mr. Donovan Belone. Good morning. Your Honor, the appellate's request that this Court reverse and remand this case because we believe that the District Court committed reversible error when it, one, granted the government's motion to preclude testimony pursuant to Rule 608 and when it denies the defendant's motion to preclude the testimony of Elaine Kuzi pursuant to Rule 608. What was the purpose for which you wanted that testimony admitted? To do what? How was it admissible, in other words? We believe that it was impeachable by contradiction in that in pretrial interviews, these two of the individuals, Tyler and Randall, indicated that at times when they had been molested, they were molested. They also witnessed four other individuals being molested as well. And they told that to the interviewer, Ms. Kuzi. They also testified to that on cross-examination at trial. The government and defense interviewed all four of these children. Isn't that kind of evidence barred by 608B, in other words, use of extrinsic evidence solely for impeachment? I don't believe it is because 608B precludes conduct. We are not introducing conduct but statements. We are not trying to say that because of some misconduct of these children in the past that they are generally discredited. They specifically made statements about this specific case, about the defendant, about the specific act for which we are in trial, and those statements were refuted or would be refuted and contradicted by the four individuals that would have testified. You either got a case right on point or what's the best case that supports your position? I believe that it would be a case that actually was cited by the government involving the standard of review would be United States v. Castillo, which I think distinguishes impeachment pursuant to Rule 608 and impeachment by contradiction. All right. As I indicated, the purpose for calling these witnesses was to show that their specific testimony and specific statements that they had made previously were false and not to impeach the credibility in terms of their general veracity with specific acts of misconduct. As I indicated, we believe that this to be a case of impeachment by contradiction, which according to United States v. Castillo is not covered by Rule 608B. The government cites the United States v. Bosley, but in that case that involved extrinsic evidence of misconduct that was unrelated to the offense charged, and we don't believe that that is relevant to this case at hand. Regarding the testimony of Ms. Cousy, we believe that the entire testimony should have been precluded regarding the general characteristics because of her dual role. She interviewed these children and then later testified as an expert on behalf of the government. That created what we believe to be a bias on her part because she now has a stake in the outcome. If she were to discuss general characteristics that did not arise in this particular case, by inference she is discrediting the witnesses for which she is later testifying for. Coincidentally, the characteristics that she did testify to mirror this case exactly. For example, she testified that some children don't disclose. That was this case according to Brandon. She testified that in certain cases nothing ever happened, or witnesses will say nothing ever happened. That is this case. She testified that in certain cases children are tentative. She testified that that is this case, as well as being fearful, humiliated, embarrassed, and threats. All of those characteristics are specific to this particular case, and it is our position then that they are not general, but they are specific characteristics related. But it really got anchored down, though, in the cross-examination, which the defense was making the particulars of this case something for her testimony. Well, one counsel had no other choice. For example, Brandon, the youngest child, could not be impeached. We had transcripts from the previous interviews, but he could not read. There would be no other way to impeach Brandon without bringing up those consistencies with Ms. Cousy. It just could not be done. But also, the fact that she was testifying just generally about what she had observed as an expert on general situations not specific to these people, why then would that have to be brought up in the cross-examination with regard to these people themselves? I believe it is one thing to cross-examine her regarding inconsistencies. It's a totally different thing for her to testify as to why these consistencies exist. All was asked of her is whether or not these kids gave inconsistent statements. She could either refute that or agree with it. But to go to the next step and then explain why these inconsistencies existed seems to invade the province of the jury. And not only that, I believe that in her direct testimony, although I have to admit that it was not objected to, she did go into specifics of her interviews when she talked about the demeanor of the children. She indicated that Tyler was fearful, excuse me, Brandon was avoiding and said at times, I don't remember and I don't forget. And I would emphasize that that's one of the general characteristics that she testified to, that Eli and Randall were both very anxious and cooperative. And then went on to say that this is the type of demeanor that is typical of what she sees after she had interviewed some 700 interviews or conducted some 700 interviews and observed 200 more. And then I believe that on redirect, she not only, she went beyond the scope, and I don't believe the fact that specific inconsistencies were asked about on direct examination permits her to give an opinion that is otherwise inadmissible. On redirect, she indicated that she was not surprised by these inconsistencies. That three of the children were threatened, that they had difficulty telling about their experiences, that they cried throughout, that their family members had been threatened, that they were embarrassed and worried about what people would think. I don't believe that questioning her about inconsistencies permits this type of opinion of evidence. I'm not clear about what was brought out on direct and what was brought out on cross. On direct, what was brought out was, one, the general characteristics that children exhibit when they have been abused. And was anything brought out on direct about these particular children? Yes. What? She testified regarding the demeanor of all four children, Tyler, Brandon, Eli, and Randall. And that was at the end of her direct testimony. On cross-examination, she was only questioned about the existence of inconsistent statements and did not question the procedure for which she followed and did not question the fact that certain children exhibit certain characteristics if they have been abused. She was only asked to confirm that certain consistencies exist. And, again, it is our position that we don't believe that that allows the government to go to the next step to explain why those inconsistencies exist. Excuse me. That is the province of the jury. You've got about a minute and a half. Do you want to reserve it for rebuttal? I would. Thank you, Your Honor. All right. Good morning. May it please the Court. Linda Boone on behalf of the United States. If there was any error in the direct testimony of Ms. Cousy, and the government does not concede that it was, it was harmless error. Pull the mic down just a little bit. It was harmless error far outweighed by the overwhelming evidence against the defendant. The evidence before the jury, Your Honors, besides the extensive testimony of the victim witnesses, which comprised nearly 200 pages of trial transcript, was that the defendant had admitted molesting each of the victim witnesses. Referring the Court to ER 644 to 647, the defendant admitted sodomizing each boy, masturbating by rubbing his penis on exposed chest and genitals of Tyler and Brandon, directing Brandon to perform fellatio upon the defendant, fondling the genitals of Randall and Eli, and he admitted molesting each of these boys at least ten times over a one-year period, sometimes alone, sometimes in groups. In what context did he make these confessions? He made these confessions that I've just reviewed, Your Honor, in a verbal statement to the case agent. But then furthermore, he made a written statement which was admitted into evidence as Exhibit 3 at ER 648 and 649. These confirmed the verbal admissions that he had made, and the admissions and the written statement of the defendant were admitted into evidence without objection by the defense, they were not challenged on course examination, and the defendant did not testify. Therefore, the testimony of the victim witnesses, more than anything else, was corroborated and bolstered by the admissions of the defendant himself. Therefore, if any error in Ms. Cousy's testimony, it was harmless. All right, speaking of the victim witnesses' testimony, what about Mr. Williams' contention that 608B applies only to evidence of conduct and not to other statements? Your Honor, I think it's important for the court to understand that the district court – can you answer this question? This is a legal question. Perhaps I misunderstood. I thought that the court was asking if 608 doesn't apply to the testimony that Mr. Williams wished to have admitted. Well, that's your position because it's, one, testimony of other statements and not of conduct, and 608B only applies to evidence of specific instances of conduct. Yes, Your Honor, but in this case, before Mr. Williams asked for – or at the time Mr. Williams was asking to have these statements admitted, there had not been testimony of the victim witnesses. So we did not – the court – the district court did not know what the testimony was going to be. After the testimony of the victim witnesses, it was established – and I would refer the court to that testimony – that only Randall and Tyler testified regarding one witness proposed by the defendant, and that was Nolan, who was also known as Sonny, and that was regarding the tent incident. That is found at ER 418 to 419 and 455 to 457. There was absolutely no testimony regarding any incidents or knowledge regarding the other proposed defense witnesses. Therefore, there was only one incident, and any other testimony that Mr. Williams proposed was regarding nonconduct. So therefore, 608B, it's the government's position, would apply. There was no testimony, and there is none cited in the defendant's brief regarding any of the other proposed witnesses. The district court allowed the testimony of Nolan. The defendant did not ask for reconsideration on the other two witnesses, proposed witnesses Darren and Christopher, only for Nolan and DeWayne, but could not cite to any specific testimony, and the government finds none. The only reference to DeWayne was found at ER 331, and the victim witness said that he had not observed any molestation of DeWayne. He did not know that he suspected, but did not know that DeWayne had been molested. So it's the government's position that 608 would apply. It would have been extrinsic to submit testimony of nonconduct, and that was all that Mr. Williams proposed in this case. The evidence, obviously, then, of any children not being molested would have been irrelevant, and so there was no abuse of discretion by the district court in its ruling. Putting aside the as to whether the conduct of the testimony was harmless or not, it seems that the expert shouldn't have been allowed to testify generally to what the characteristics are and then go ahead and apply it to each of these children. It seems to me that latter part of the testimony was harmful. Your Honor, are you referring to the direct or the redirect? Starting with the direct. Starting with the direct. The direct, Your Honor, was limited specifically and only to the demeanor of the four victim witnesses. It was less than a page and a half of transcript, and the only comments regarding the specifics of Ms. Cousy's interviews was regarding whether they were crying or anxious, cooperative. There were no specifics regarding the statements and what was said in the statements, answers to her questions. The only specifics regarding inconsistencies, details of the statements of the victim witnesses, came out on cross-examination of Ms. Cousy. Absolutely no specifics and details. And the defendant repeatedly asked about the inconsistencies over and over again for each of the victim witnesses. Therefore, when the government on redirect asked Ms. Cousy if she was surprised by these inconsistencies, it was a natural outgrowth of what had been asked upon cross-examination. Government's position is that it was invited error and not improper to follow up on the inconsistencies. It was only after the lengthy and detailed cross-examination that these details came out. She was asked if the demeanor you saw in these four children is typical of victims. Yes, Your Honor. So that seems to me crossed the line. Your Honor, if it was close or if it crossed the line, government's position is still that it was harmless in light of the overwhelming evidence and that then the following redirect was invited error. If there are no further questions. Thank you, Your Honor. Mr. Williams, a rebuttal. I dispute the fact that the evidence was overwhelming as a result of my client's, of Mr. Ballone's confession. Mr. Ballone had been harassed and interviewed by the government some three to four times before at one point in time he indicated, and it is in the record, that he just simply said what they wanted him to say. But what's important about that is what he did say happened is absolutely inconsistent with the physical evidence for which there was none. And it is also absolutely in direct contradiction to what the children said. So while this confession is an admission to something, it is inconsistent with the physical evidence and it is absolutely inconsistent with what each and every one of these children said. So I submit that that is not overwhelming evidence. It is evidence of a confession that was a result of repeated harassment by the government in interviewing Mr. Ballone not only at his work but at other locations as well. Now, did the jury hear that this confession was perhaps not fully voluntary  I apologize, I'm sorry. I believe that was part of the cross-examination of the interviewing witness which what I believe was Detective Charles, or excuse me, Special Agent Charles Jones. So that would have been brought out in front of the jury, not only the repeated interviews but my client's confession and then his subsequent refuting that confession and explaining that it was only the result of simply being harassed and wanting to leave and go back to work for which he was released that day. But he didn't take the stand, so the jury had that confession before them perhaps somewhat impeached by other testimony. Yes, but Mr. Ballone denied these acts on three previous occasions. He admitted it during the course of one interview and then subsequently denied it again. So the government was... Now, did that all came out before the jury that he denied it? Yes. Okay. Thank you. Thank you. Thank both counsel for the argument. This case is submitted for decision. Next case on the argument calendar is U.S. v. Valencia. Good morning, Your Honor. Antler Bagot for the appellants. Good morning. Your Honor, the point and purpose of Rule 11 is that when a criminal defendant enters a plea of guilty he does so with his eyes open.
judges: Hug, B Fletcher, Tashima